## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1) TAMRA FRENCH, AS NEXT FRIEND AND | § | |
| PARENT OF C.F., A MINOR ; | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ CIV-21-640-SLP |
| | § | |
| 1) GUYMON PUBLIC SCHOOL DISTRICT and | § | |
| 2) SCOT DAHL, | § | |
| Defendants. | § | |
| | § | |

### PLAINTIFFS' ORIGINAL COMPLAINT

COMES NOW, Tamra French, As Next Friend and Parent of C.F., A Minor, and through their attorneys of record files this *Original Complaint* showing that the Guymon Public School District [hereinafter referred to as "the School District"] and Scot Dahl, Individually, violated C.F.'s rights as more specifically pled herein. Plaintiffs reserve the right to re-plead if new claims and issues arise upon further development of the facts, as permitted by law and this Court. In support thereof, Plaintiffs respectfully show this Honorable Court as follows:

### I.
### STATEMENT OF THE CASE

1.     At pertinent times to this lawsuit, Scot Dahl was the Supervisor of Transportation for Guymon Public School District.  He also acted as a driver for the School District

Original Petition                                                                                                   1

for certain programs. Over time, he singled out particular male students and *groomed* them as objects of his emotional, physical and sexual attention. C.F. was one such student. As part of his deception, Dahl would assign himself to drive the bus on overnight school trips. It was on such a trip that Dahl's attention to C.F. progressed from inappropriate to sexually assaultive.

2. C.F. alleges the School District violated his rights pursuant to the Fourteenth (14th) Amendment to the United States Constitution, remedied pursuant to 42 U.S.C. Section 1983. C.F. also asserts that Dahl violated constitutional rights pursuant to the First (1st) Amendment, Fourth (4th) Amendment and Fourteenth (14th) Amendment that likewise may be remedied pursuant to 42 U.S.C. Section 1983. Last, C.F. also asserts claims pursuant to Title IX of the Educational Acts of 1972, 20 U.S.C. §1681-1688.

## II.
## JURISDICTION

3. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and 1343 because the matters in controversy arise under the laws of the United States.

## III.
## VENUE

4. Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs' claims occurred in the Western District of Oklahoma.

Original Petition                                                                 2

## IV.
## PARTIES

5.    C.F. lives with his natural mother Tamra French in Guymon, Oklahoma and within

the Guymon Public School District catchment area.

6.    The Guymon Public School District is a subdivision of the government and

organized under the laws of the State of Oklahoma.  As a matter of course, it must

follow the relevant requisites of the Constitution of the United States of America,

as well as the statutes and regulations promulgated thereunder.  At all times

pertinent to this case, C.F. was a student in the Guymon Public School District.

The School District may be served by and through its Superintendent, the

Honorable Ms. Angela Rhoades, at 801 N. Beaver, Guymon, Oklahoma 73942.

7.    Scot Dahl is an individual defendant, and may be served with process at 819

Riverview Avenue West, Alderson, West Virginia 24910.

## V.
## FACTUAL BACKGROUND

### A.    ABOUT THE GUYMON PUBLIC SCHOOL DISTRICT

8.    Defendant school district must follow the relevant requisites of the Constitution

of the United States of America, as well as the statutes and regulations

promulgated thereunder.  This includes but is not limited to Title IX of the

Educational Acts of 1972, codified at 20 U.S.C. §1681 ("Title IX") which is intended

to assure a student is not a victim of bullying, harassment, sexual harassment and

Original Petition                                                                          3

especially sexual assault based upon sex, gender or gender stereotypes.

9.    The United States Department of Education ("DOE") has promulgated rules to help implement Congress' intent including but not limited to the duty to provide a student who has been victimized by sexual harassment a number of procedural safeguards. They include, but are not limited to, the duty to disseminate information about the Title IX Grievance Procedures, including the name of the Title IX Coordinator, the right to file a complaint, the duty of the school district investigate such complaints, the duty to make reasonable attempts to correct a problem and the right to appeal decisions.

10.   Additionally the *Office of Civil Rights* ("OCR") with the DOE has provided professional guidelines and directives on this topic to School District's all over the United States; *see* 62 Fed. Reg. 12034- 12051 (March 13, 1997), that further enunciate the procedural safeguards mentioned in the regulations. It much more specifically addresses how a School District staff  and administrators should respond to allegations of sexual harassment.  This includes but is not limited to a prompt, thorough and impartial investigation and taking interim measures. Importantly, responsive measures should be designed to minimize the burden on the victimized student, address the *hostile educational environment* and provide relevant services to both the victim and alleged perpetrator and in some cases the greater student body. (p. 12042-12043). All these rules, regulations and

professional guidelines, are now part of a large body of case law and jurisprudence that together make clear that School District personnel must understand their legal obligations as to Title IX (preventative, investigatory, and remedial).

11.   As such, the School District's board of trustees, as did many other school boards and districts across the U.S. and Oklahoma, developed policies and procedures to effectuate Congressional intent, satisfy Department of Education regulations, Office of Civil Rights professional directives and emerging case law on Title IX. Most relevant to this cause, and the following factual resume made the basis of this complaint, are school board policies regarding the duties of School District personnel when receiving an allegation that a student has been a victim on bullying, harassment, assault or even sexual assault based upon their sex or gender.

12.   For instance, Board Policy DA notes that the School Board does not tolerate sexual harassment, assault or exploitation based upon sex, especially with a teacher and student as contemplated by Title IX. Moreover, and pursuant to Policy DAA also address the fact the School Board does not tolerate discrimination based upon sex. The School Superintendent is the District's Title IX Coordinator as noted in Policy DAAB. Policy DAAB-R includes what the School Board has defined as "Regulations." They include but are not limited to the duty to

investigate complaints and provide a grievance procedure in general (Policy DAAB-P). Policy DAAB-P2 more specifically defines "pre-filing procedures," filing a formal written complaint and the process for the alleged perpetrator to follow. After a response is provided both the complaint and response are referred to the appropriate designee of the Title IX Coordinator. A hearing on the allegations is also scheduled. A report must be filed within ten (10) days and any person dissatisfied with the finding may request a meeting with the Superintendent, who may also conduct a Hearing, issue a decision. That decision may be appealed as well (*see also* Policy FB-1, FBA, FBA-R) to the Board Of Education.

13.    From approximately 2009 to 2020, Defendant Scot Dahl was the supervisor of the School District's transportation department. He also was a bus driver. Prior to that, it is believed that he was a member of the Guymon Public School District's board.

14.    The President of the School Board at relevant times herein was Mr. Mike Ray. He was also on the Board of Directors for a local church, the Guymon Church of the Nazarene. The Pastor of that Church is Reverend Craig Shepperd. Rev. Shepperd raised concerns (about Dahl's conduct with students) to Board President Ray over a year prior to Dahl's sexual assault of C.F.

**B.    ABOUT C.F.**

15.    C.F. was born in October of 2005 and is now fifteen (15) years old. He lives with

his mother Tamra, and his younger brother.

16.    C.F. has attended Guymon Public Schools since 1st grade, with the exception of 3rd grade.  During the 2019-2020 school year, he was in 8th grade.

## C.    ABOUT DAHL

17.    Prior to the 2019-2020 school year, upon information and belief, the Defendant School District was aware of complaints about Defendant Dahl.

- A.  A former school secretary at Guymon PSD complained to the school board about Dahl's conduct;

- B.  Barbara Homan (long time school cafeteria employee) complained to administration that she was uncomfortable with, and around, Defendant Dahl, and with his conduct around students;

- C.   In about 2015, it was common knowledge at Defendant School District that Defendant Dahl:

    - i.  Was inviting high school boys to his house to "party". The board was notified but took no action against him;

    - ii.  Was switching students' hotel room assignments on school trips;

    - iii. Was giving money/gifts to certain male students

who fit a specific profile (disadvantaged, socially

awkward, sexually/socially insecure);

- iv. Used the high school premises and his

administrative school position to invite high school

boys to his house;

- v. Used the high school premises and his

administrative school position to invite high school

boys to his house to drink alcohol;

- D. Dahl recruited certain boys to help him "clean school

buses", without any other adult supervision;

- E. Dahl took male students on various trips (under the guise

of school related activities) for athletic clinics, to dine, and for

recreational trips.

- F. Upon information and belief, Dahl groomed one or more

of the high school boys into sexual misconduct.

- G. Mike Taylor (former head coach at Guymon PSD), told his

players (Guymon PSD students) years prior to the 2019-2020

school year, to stop socializing with Dahl.

18. Craig Shepperd arrived in Guymon in 2018, as pastor for Guymon Church of the

Nazarene.  Plaintiffs, Defendant Dahl, Defendant Guymon PSD's school board

president, and many others attended that church.   Pastor Shepperd was concerned about Dahl crossing boundaries with students at school.

19. Specifically, Pastor Shepperd observed Dahl showing special attention and affection to vulnerable male students who were often low income, socially awkward, were getting in trouble and/or questioning their own sexuality. Additionally, Dahl took some boys to Red River, New Mexico, and to Six Flags Amusement Park, but told others the trip was church related. The Pastor confronted Dahl and cut Dahl off from church related activities.

20. In Fall 2018, Pastor Shepperd shared his concerns with School Board President, Mike Ray. Pastor Shepperd told Mr. Ray that Dahl's interactions with many male students was inappropriate. Pastor Shepperd particularly stressed that he would never permit such interactions in any of his church related programs. In response, Board President Ray said, *"Is Dahl's conduct stupid? – Yes. But it is not illegal*." Upon information and belief, Defendant's school board did nothing to investigate.

**D.   WHAT HAPPENED**

21. During the 2019-2020 school year, C.F. was in 8th grade, and was targeted by Defendant Dahl.  Several times, Dahl went to C.F.'s home when C.F.'s mother was still at work.  During summer 2019, Dahl showed up at the home requesting to take C.F. and his older brother to hang out and eat.  C.F.'s parents told Dahl "no".

Original Petition                                                                                          9

22.   On one occasion, Dahl took C.F.'s older brother out of the house and into the community.  C.F.'s mother disapproved; she asked Dahl to stop.

23.   On another occasion, Dahl invited C.F.'s older brother (along with other school employees and students) to his house.  Alcohol was present; C.F.'s brother felt uncomfortable and quickly left.

24.   In order to "groom" C.F., and by-pass his mother, Dahl persistently asked C.F. to help "clean the school buses"; almost every other week during the Fall 2019 semester. Such "bus cleaning" sessions gave Dahl more time to groom C.F. privately, on school property.

25.   Dahl also frequently called C.F. on his cell phone. On one such occasion, C.F.'s grandmother over heard the conversation in which Dahl insisted that C.F. come over to Dahl's house to "hang out and then go to lunch".  C.F.'s stepfather told Dahl to stop calling C.F.

26.   On or about January 25, 2020 members of the Guymon High School Future Farmers Of America ("FFA") went on a school trip to Oklahoma City.  As he often did, Defendant Dahl arranged to drive even though as Supervisor he did not have to do so.  He had a history of driving for school events involving boys.  As was typical of such trips, hotel room assignments were made by teachers and administrators prior to the excursion.

27.   Nevertheless, Dahl changed the hotel room assignments so he and C.F. could share

a room by themselves. Teachers Kevin Alms, Tonya Alms and Kim Costilla were all aware that Dahl changed hotel room assignments, but did nothing. [*Later, Mr. Alms and head coach Taylor told C.F.'s stepfather that it was common knowledge among staff and administration that Dahl routinely changed school-assigned hotel room arrangements on school trips*].

28.    Dahl told C.F. they should sleep in the same bed, so as not to "mess up" the other bed. Dahl then crawled into bed with C.F. and sexually assaulted him.  C.F. was embarrassed and ashamed; he called his stepfather to pick him up from Oklahoma City.  C.F. shared no details of what happened. No one from the school informed (or requested permission from) C.F.'s parents that Dahl privately shared a hotel room with the boy.

29.    Months later, C.F. told his parents some details of the incident.  His parents immediately notified OSBI (Oklahoma State Bureau of Investigation), and reported the incident to Board President Mike Ray.  Ray tearfully responded that, although the school board was aware of Dahl's prior improper conduct, they assumed (without investigation), "**that no laws were broken**".

30.    C.F.'s mother later learned that Dahl slept with C.F. on at least one other, prior school trip to Oklahoma City in which Dahl assigned a hotel room to himself, C.F. and two other boys.  Dahl suggested that he and C.F. should share one bed since they knew each other, and the other two boys could sleep in the other bed. It was

Original Petition

another step in Dahl's grooming process.

31.    C.F.'s parents also later learned that Dahl had sent sexually inappropriate messages to C.F.   Dahl's texts included references to showering, and inquiring whether C.F. would like to see him naked.   There were also late night messages (after midnight) asking C.F. how he was doing.

32.    Dahl has an adopted son from Korea and it is reported they have not spoken for years.   He also has a daughter; reportedly there is no contact between them either.   After the events described above, Dahl's daughter reached out to C.F.'s mother concerned that her father would "get away with it again."

33.    On behalf of the school district, Andy Brown (current athletic director and Title IX Coordinator for the school district) told C.F.'s stepfather that, "This situation does not warrant any Title IX assistance".   The Superintendent for the School District, Angela Rhoades, affirmed this decision, which was rubber-stamped by Guymon Public School District's Board.

34.    C.F. is currently in therapy.

## VI.
## STATE ACTION

35.    Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

36.    The School District, in any capacities and in all matters, acted under color of state

law when it permitted Plaintiff to be subjected to the wrongs and injuries set forth herein.

## VII.
## CONSTITUTIONAL CLAIMS AGAINST DEFENDANT SCHOOL DISTRICT

37.    Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

38.    Plaintiff contends that the Defendant School District had a number of written policies and procedures to protect C.F. from exploitation, abuse and sexual harassment from a teacher with the School District. Such policies and procedures are intended to protect his constitutional rights.

39.    These policies and procedures were based upon well-developed and settled federal case law, federal rules, directives from federal executive agencies like the *Office of Civil Rights* with the United States Department of Education, directives from the National and Oklahoma State School Boards Association, Oklahoma law, Oklahoma rules and ethical standards for educational professionals.

40.    Given the litany of facts noted above, and the School District's awareness of actual policies, practices and customs in place, the School District's failure and refusal to follow the written policies and procedures developed by the School Board rose to the level of deliberate indifference; thereby violating the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States,

Original Petition                                                                                                    13

and for which C.F. seeks recovery pursuant to 42 U.S.C. §1983.

41. In addition, and in the alternative to the above the School District had an actual policy, practice and custom of failing to correctly *train* staff members in regard to reporting allegations that a student was a victim of abuse, such failures injuring C.F. and thereby and giving rise to his claim for violation of rights pursuant to the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States, for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

42. In addition, and in the alternative to the above the School District had an actual policy, practice and custom of failing to correctly *supervise* staff members in regard to reporting allegations that a student was a victim of abuse, such failures injuring C.F. thereby and giving rise to a claim for violation of his rights pursuant to the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States, for which Plaintiffs seeksrecovery pursuant to 42 U.S.C. §1983.

43. Defendant's Board President Ray had a legal duty to report to the School District's Title IX Coordinator, and properly investigate concerns that Dahl was having inappropriate contact with students, but did not.

## VIII.
## 14th AMENDMENT CLAIMS AGAINST DEFENDANT DAHL

44. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

45. C.F. has a constitutional right, pursuant to the Due Process Clause of the 14th

Amendment to the United States Constitution, to be free from physical abuse by a School District Employee.

46.   This failure was a moving force in the abuse C.F. later experienced at the hands of Individual Defendant Dahl.

47.   As such C.F. seeks recovery pursuant to 43 U.S.C. §1983.

## IX.
## CONSTITUTIONAL CLAIMS AGAINST DAHL

48.   Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

49.   42 U.S.C. §1983 protects a student at a public school from violations of their federally protected rights. In the instant case, C.F. had his constitutional rights violated by Dahl in the following manner and particulars.

**A.      RIGHT TO BE FREE FROM UNREASONABLE RESTRAINT**

50.   Plaintiffs contend that the acts and omissions of Dahl violated the rights of C.F. to be free from unnecessary restraint pursuant to the Fourth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

**B.      PROPERTY INTEREST**

51.   Plaintiffs contend that the acts and omissions of Dahl violated C.F.'s property interest in education pursuant to the Due Process Clause of Fourteenth Amendment of the Constitution of the United States for which he seeks recovery

pursuant to 42 U.S.C. §1983.

**C.      LIBERTY INTEREST**

52.    Plaintiffs contend that the acts and omissions of Dahl violated C.F.'s protected liberty pursuant to the Due Process Clause of Fourteenth Amendment of the Constitution of the United States for which he seeks recovery pursuant to 42 U.S.C. §1983.

**D.      EQUAL PROTECTION CLAIM**

53.    Plaintiffs contend that the acts and omissions of Dahl violated C.F.'s right to *Equal Protection* under the law, pursuant to the Equal Protection Clause of Fourteenth Amendment of the Constitution of the United States, for which he seeks recovery pursuant to 42 U.S.C. §1983. Here the claim is twofold. First, C.F. did not receive equal access to educational services because of the acts and omissions of Dahl. Second, C.F. did not receive Equal Protection from sexual harassment, as non-harassed students.

**X.**
**TITLE IX OF THE EDUCATIONAL ACTS OF 1972**

54.    Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

55.    The Educational Acts of 1972 passed through Congress as Public Law No. 92-318, 86 Stat. 235 (June 23, 1972) and codified at 20 U.S.C. sections 1681 through 1688. It is commonly known as "Title IX" and states (in part) that:

Original Petition                                                                                                          16

"No person in the United States shall, on the basis of

gender, be excluded from participation in, be *denied the*

*benefits of*, or be *subjected to discrimination* (emphasis

added) under any education program or activity receiving

federal financial assistance."

56.   C.F. was a victim of discrimination because the School District failed to address

allegations he was a victim of bullying, harassment, assault and even sexual assault

on the basis of sex, gender or gender stereotype, thereby violating his rights under

Title IX.

57.   Such failures, individually and in concert with each other caused him to experience

a hostile educational environment for a significant period of time in the 2019-20

school year.

58.   In addition and in the alternative, such failures, individually and in concert with

each other, caused C.F. to be groomed and sexually assaulted by Dahl.

59.   Further, and in addition and in the alternative, such failures, individually and in

concert with each other caused C.F. to experience a hostile educational

environment.

## XI.
## RATIFICATION AND RESPONDEAT SUPERIOR

60.     Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

61.     Defendant's school board ratified the acts, omissions and customs of school district personnel and staff and as such is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of C.F.

## XII.
## PROXIMATE CAUSE

62.     Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

63.     Each and every, all and singular of the foregoing acts and omissions, on the part of the School District, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XIII.
## DAMAGES

64.     Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

65.     As a direct and proximate result of the School District's and Dahl conduct, C.F. has suffered injuries and damages, for which he is entitled to recover herein including

Original Petition                                                                                          18

but not limited to:

    a.     **Loss of equal access to educational opportunities;**

    b.     **Physical pain in the past;**

    c.     **Medical expenses in the past;**

    d.     **Mental anguish in the past;**

    e.     **Mental anguish in the future;**

    f.     **Mental health costs in the past;**

    g.     **Mental health costs in the future;**

    h.     **Physical impairment in the past and future;**

    i.     **Reimbursement of past and future out-of-pocket expenses incurred by the family of C.F. but for the acts and omissions of the School District and Dahl.**

## XIV.
## ATTORNEY FEES

66.    Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth herein.

67.    It was necessary for Plaintiffs to retain the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs pursuant to Title IX, and 42 U.S.C. §2000d et seq. and 42 U.S.C. §1983 and 1988.

## XV.
## SPOLIATION

68.    Plaintiffs hereby require and demand that the Guymon ISD preserve and maintain all evidence pertaining to any claim or defense related to the assault or

other violations that make the basis of the complaint and the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence regarding the violations set forth herein.

69.     Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation inference rule: an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

## XVI.
## DEMAND FOR JURY TRIAL

70.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray for judgment against the Defendants, jointly and severally, in the manner and particulars noted herein and above, and in an amount sufficient to fully compensate them for the elements of damages noted herein and above, judgment for damages, recovery of attorney's fees and costs for the preparation and trial of this cause of action and for its appeal if required, together with pre- and post- judgment interest and court costs expended

Original Petition

herein, as well as the equitable issues noted herein and above; and for such other relief as the Court, in equity, deems just and proper.

Respectfully submitted,

/s/ Benjamin J. Butts
Benjamin J. Butts
OK State Bar No. 10228
Bbutts@mbmlaw.net
Butts & Marrs, PLLC
5655 N. Classen Blvd.
Oklahoma City, OK 73118
(405) 608-0098
(405) 608-0083 – Facsimile
**ATTORNEY FOR PLAINTIFFS**


Anthony O'Hanlon (pending Pro Hac admission)
TX State Bar No. 15235520
aohanlon@somlaw.net
Anthony O'Hanlon, P.C.
111 S. Travis St.
Sherman, Texas 75090
903.892.9133
903.957.4302 – Facsimile
**ATTORNEY FOR PLAINTIFFS**

Martin Cirkiel (pending Pro Hac admission)
TX State Bar No. 00783829
marty@cirkielaw.com
Cirkiel & Associates
1901 E. Palm Valley Blvd
Round Rock, Texas 78664
512.244.6658
512.244.6014 – Facsimile
**ATTORNEY FOR PLAINTIFFS**

Original Petition

21